**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

MIKAIL MARTINEZ,

    Plaintiff,

       v.                      CAUSE NO. 3:26-CV-277-TLS-JEM

MIAMI CORRECTIONAL FACILITY,
KUENZLI, LEANNE IVERUS, KIM
MYERS, KELLY SMITH, ANGLE,
HERSHENBERGER, INDIANA DEPT
CORRECTIONS, CENTURION MEDICAL
GROUP LLC,

    Defendants.

**OPINION AND ORDER**

Mikail Martinez, a prisoner without a lawyer, filed a complaint. ECF 1. Under 28 U.S.C.

§ 1915A, the court must screen the complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief

against a defendant who is immune from such relief. To proceed beyond the pleading stage, a

complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S.

89, 94 (2007).

Martinez alleges he was attacked by fellow inmates at the Miami Correctional Facility

(MCF) on April 1, 2025. He was sent to the emergency room following the attack and was

hospitalized for a broken neck and two collapsed lungs. He was eventually released from the

hospital with a medically prescribed neck brace. After he returned to MCF, he was placed in protective custody on April 25, 2025. He claims various Indiana Department of Correction (IDOC) officials and medical professionals employed by Centurion Medical Group, LLC (Centurion) violated the Eighth Amendment because they: 1) failed to assure he had his neck brace while in administrative segregation; 2) did not follow up with neck and chest x-rays while in administrative segregation; and/or 3) ignored his requests for his medical packet/records while in administrative segregation. He has sued each of the nine defendants for compensatory and punitive damages.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee County.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

2

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697–98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally do not violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. County of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). That said, "[a]n official's 'mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient.'" *Id.* (quoting *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011)).

There are several problems with Martinez's complaint. To start, it is impermissibly vague. While it is clear he had a neck injury that was treated at the hospital, it is unclear what happened after that. He claims he was not given his prescribed neck brace, but he does not say when or for how long this alleged violation occurred.[1] He does not say why the neck brace was needed, what symptoms he was experiencing, what medical care, if any, he did receive while at MCF, or why additional x-rays were necessary. Allegations of the denial of "proper and adequate medical treatment" are not sufficient. Moreover, he recites the same general allegations over and over, rather than specifically describing what each defendant did, or did not, do. In sum, the complaint is short on facts, dates, and specifics about the medical treatment he has received. Based on what it does say, it is not plausible to infer that he is not receiving constitutionally adequate medical care. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.")

---

[1] He repeatedly refers to April 1, 2025, as the date of his injury and April 25, 2025, as the date he was moved to protective custody at MCF, but he does not provide any additional details.

4

(emphasis in original)); *Moderson v. City of Neenah,* 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)); *Burks v. Raemisch*, 555 F.3d 592, 594, 596 (7th Cir. 2009) (explaining there is no general respondeat superior liability under 42 U.S.C. § 1983, and "public employees are responsible for their own misdeeds but not for anyone else's").

Martinez also alleges several of the defendants denied him access to his medical "packet," medical records, and/or copies of his x-ray in violation of IDOC policy. However, this is not a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 F. App'x 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)).

He has sued Centurion for employing the doctors and staff members who allegedly denied him medical care, but there is no respondeat superior liability under 42 U.S.C. § 1983, and a private company cannot be held liable for damages simply because it employed a medical professional who engaged in wrongdoing. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). Nor has Martinez stated a plausible claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Martinez has also sued IDOC and MCF as a whole, blaming the "administrative staff" and "medical staff" for the various violations described above. ECF 1 at 11–12. This is insufficient. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (explaining allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were

insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, at *1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). More importantly, he cannot sue these defendants for money damages. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[S]tate agencies, as arms of the state, are immune from suit under the Eleventh Amendment.").

This complaint does not state a claim for which relief can be granted. If Martinez believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

As a final matter, Martinez has filed a separate motion for preliminary injunctive relief. ECF 4. The motion is unsigned. Federal Rule of Civil Procedure 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id*. Here, it would be futile to allow Martinez an opportunity to resubmit a signed copy of the motion because it is without merit.

6

A preliminary injunction is a "very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To obtain a preliminary injunction, a movant "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612–13 (7th Cir. 2020) (quoting *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the merits, "the applicant need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* at 792.[2] With regard to irreparable harm, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. If the movant meets all the threshold requirements, the court may then "consider the balance of

---

[2] The Seventh Circuit has recognized this step is "often decisive," and a court need not analyze the remaining elements when that is the case. *Univ. of S. Ind.*, 43 F.4th at 791.

7

harms between the parties and the effect of granting or denying a preliminary injunction on the public interest." *Tully,* 977 F.3d at 613 (quotation marks omitted).

"Mandatory preliminary injunctions" requiring the defendant to take affirmative acts—such as transferring an inmate to another prison—are viewed with particular caution and are "sparingly issued[.]" *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (cleaned up).

Here, Martinez asks the court to order Centurion to "follow up on neck and chest x-rays of the plaintiff and to release copies of those x-rays to the plaintiff." ECF 4 at 1. However, he has no chance of success on the merits of such an injunctive relief claim because—as described in detail above—his complaint, which seeks compensatory and punitive damages, fails to state any plausible claims.

For these reasons, the court:

(1) STRIKES the unsigned motion for preliminary injunctive relief [ECF 4], but it will remain part of the record and accessible by the public;[3]

(2) GRANTS Mikail Martinez until **April 16, 2026**, to file an amended complaint; and

---

[3] That is because "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 945 (7th Cir. 1999). Thus, "[w]hat happens in the halls of government is presumptively open to public scrutiny." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). In plain terms, "[j]udges deliberate in private but issue public decisions after public arguments based on public records." *Id.*

(3) CAUTIONS Mikail Martinez if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on March 20, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

9